We're going to wait just a moment. We're going to wait just a moment until the courtroom settles. All right, the next case is American Alliance for Equal Rights v. Fearless Fund Management, LLC. And we will hear first from Mr. Dickey. Thank you, Your Honor. And may it please the Court. Gilbert Dickey on behalf of Appellant, American Alliance for Equal Rights. Section 1981 prohibits racial discrimination in contracting. The Supreme Court has already said that this prohibition doesn't violate the First Amendment. It regulates conduct, not speech. Even if a discriminator intends to send some message through their racial discrimination, it's still conduct, not speech. This case calls for a mine run application of Section 1981, not some strange exception. After all, Fearless boasts that it engages in racial discrimination, and the district court correctly found that the contest is a contract. Fearless' primary defense, and the one that the district court agreed with below, is that its discrimination is somehow an exception to this and is expressive conduct. They advance basically two reasons for this argument, neither of which works. First, they argue that they label their contest a donation. And second, they argue that the discrimination itself in this context is expressive. Starting with the first, the expressive conduct inquiry does not turn on how they choose to label the behavior. It turns on how a reasonable person would understand the behavior. Let me ask you a question about that. So, you agree that if they just, on their own, went about searching for a black woman business, a black businesswoman I guess, and decided that they wanted to give that black businesswoman money, that that would be perfectly fine? That would not be prohibited by Section 1981. I also don't think that would be expressive conduct in and of itself because they've cited no case where any court has ever said. Right. You're saying it would be speech is what I'm saying. No, I'm not. I'm saying that would not be speech. They've cited no case where any court has ever held that even if you treat something as a donation, that it is expressive when they are giving money merely to a person or to a business organization. Every case that they've cited involved some sort of cause-oriented organization. And I think it's fundamentally different, and this is all a context-specific inquiry. And so, the context is fundamentally different. What's your judgment that it's a cause-oriented, that one is a cause-oriented situation and one is not? I think we don't look at people and view them as racial causes, which is I think what would have to be the case for you to see a donation to, say, a black female business owner and infer that the person donating the money is sending some sort of message about race. Well, I mean, if the point of the donation is, if the entire point of the organization and the donation is to send the message that black businesswomen are worthy and have been overlooked and left out, then why isn't that speech? Just to clarify, Judge Rosenbaum, are you saying the entire point of the organization giving the money's purpose? Yes. So, I don't think we look at the person discriminating previously expressed views to decide whether the actual conduct is expressive. What the Supreme Court says is that you look at the conduct itself and not their previous speech and speech surrounding it to figure out whether the conduct is expressive. And so, I think to, you know, sort of... Can I ask you a quick question about that? So, what is the... Just so I'm clear, I take your point that the law says that the conduct itself must be expressive. It can't need an assist from other speech, basically. Is the first line of the eligibility section of this contract that says, you know, this contest is open only to black female-owned businesses, is that part of the conduct? Or is that sort of an announcement, like a speech issue? Does that make any sense? Yes, that does make sense. So, I think giving them the benefit of the doubt, we include that here for the simple reason that as the pickup case where we cited Judge O'Scanlan saying contracting is conduct, and here that's a term that's put in the contract. But I think it doesn't really matter here for two reasons. First of all, the court has long said discrimination itself is not expressive. This court recently reaffirmed that principle in the Norwegian cruise lines where it reiterated that discrimination itself is not expressive. So, even if you throw that in, it's sort of like, you know, the whites-only signs that used to be outside restaurants. You know, the mere fact that there's like some thing you could treat as speech around it doesn't matter. Also, even if you include it in the conduct, there are firm holdings it's not enough. And I think it would actually help our case if you take the alternative view and say that because, you know, this contract is actually a bunch of words, we throw that out. Because then I think all we would be left with basically is them exchanging a check. It's not even clear whether that's public. They can't pull in the publicity later and argue that that makes that exchange speech. And if all we have here is, you know, a check going to a business, I think they're on a very thin, I just think there's no way to argue that any reasonable person would just jump to, frankly, the bigoted assumption that the only purpose for that, the only reason that woman or business was selected for the exchange was because of her race. So I think that would actually be helpful if you exclude that information. But because it's a contract, it can be treated as conduct. It's just categorically excluded as expressive under binding precedent in this court. Can I turn your attention to the argument that they make that the affirmative action slash remedial program exception that has been found under Title VII applies equally under 1981 and especially under our precedent in the form of Farrell, which seems to say that? Sure. First of all, we think strict scrutiny applies here, and I don't think Farrell holds otherwise. So in Farrell, the court said. Let me stop you then. If your response to that is just that strict scrutiny applies. It seems to me like this case is distinguishable from the cases you rely on for strict scrutiny in that in those cases, we were talking about government funding. And so the 14th Amendment was involved. And here, we're talking about private funding. And so the 14th Amendment is not involved. And we're looking at the 13th Amendment. Did you want to address that? So I think strict scrutiny applies as strict scrutiny either way. There's binding precedent saying that 1981 applies to private conduct in this court. So I think if you're applying 1981 and then bringing in an atextual exception, then the I'm sorry. Let me just ask you to address specifically. We have said in Farrell that that exception that's been recognized by the Supreme Court in Title VII applies in 1981 cases. Do you agree that we've said that in Farrell? So Farrell said the following words. I think it says there is a affirmative action exception to Title VII. And this exception applies to Section 1981. That was, of course, before Gratz. And Farrell had no cause to pass on what the appropriate standard was under Section 1981. But that's sort of not answering the question. The problem that I see, right, is that Farrell is binding precedent. And in Farrell, the point that the Title VII exception applies to the 19 is an exception under 1981 as well. What was necessary to the holding, because the court had to determine whether that exception applied in that case under 1981. And so that makes it part of that holding. Gratz did not abrogate that. Gratz was a public funds case under the 14th Amendment, 1981. And the contract actions here are under the 13th Amendment. Why are we not bound by the prior precedent rule to our interpretation under Farrell? Just one quick thing, and then I'd like to turn to one other point on affirmative action, just to clarify. But I don't think it's a binding holding on the standard in Farrell, because the court had no call to apply a standard, because it found the plan at issue was not an affirmative action plan at all. And so you'd basically be reading into a snippet the fact that the court chose to use the word this exception instead of an exception, that the court was saying the same standard must apply. And you'd be putting that against the Supreme Court, not only saying that the appropriate standard is strict scrutiny, but actually applying that standard to the university and Gratz, and later extending that footnote. Even if there is an affirmative action exception that applies per Farrell under Section 1981, do you think you lose? No, absolutely. That was going to be my next point, Judge Newsom. There are almost too many reasons to cover briefly for why we would win, even under the looser standard established for Title VII cases under Weber and Johnson. To state maybe the most obvious, those cases, as always said, you cannot have an absolute bar. I don't know what's a more absolute bar than saying this is a 100% quota. Anybody but a black woman cannot even enter the competition field here. I think we would win under even the looser Johnson and Weber standard quite easily. I'm happy to answer any additional questions that the court has, but if there are no further questions right now, I'd like to save some time for rebuttal. Thank you, Mr. Dickey. We will hear from Ms. Dinerstein. Mr. Dinerstein, my apologies. Your Honor, it's actually Mr. Schwartz. We informed the clerk we're going to split the time with 10 minutes for me and 5 minutes for Ms. Dinerstein, if that pleases the court. That's fine. Thank you. Just so I'm clear, you'll both be prepared to address any issue, correct? You're not dividing issues. Judge Newsom, I'm addressing everything but standing, and my partner, Ms. Dinerstein, is going to address standing, so I will not be prepared to address standing, but everything else I will. Please proceed. Thank you, Your Honors. May it please the court. This is an unprecedented effort to use Section 1981 to force a charity to reverse its message or shut down. The argument from the alliance is give to everyone or no one. No court has ever done that for good reason. There is a proud tradition in this country since its founding of self-help charities for various groups. The Sons of Italy, the Irish Society, the Hebrew Free Burial Society, Today's United Way. I could list hundreds of United Way charities that are directed in this way. At the time of the enactment of Section 1981, there were the Daughters of Africa, the Order of Tents, and the Reconstruction Congress itself created the Freedmen's Bank. All of those efforts are protected for two reasons. Number one, under the First Amendment, they are core expressive activity, and I will address that. Number two, they are not within the scope, they are not within the mind run of 1981. And then lastly, the just sort of basic building block reason why the district court's judgment should be affirmed is there was an elementary failure of proof on irreparable harm that doesn't even get into these issues. So I'd like to address all three of those things briefly. Can I ask you maybe to address the hypothetical statute that your opponents put to you in the brief? You know, does the logic of your position likewise protect a white men only contest? Your Honor, what I would say is... That's a pretty simple yes or no, really. It is a simple question, and what I would say is, first of all, no matter how repugnant I might find that, the First Amendment protects all speech. And so if the white men's fund was set up in the same way that it was a charitable contribution given four times a year in small amounts in order to express a message, then it would meet the standard of Coral Ridge, where we would look at is it expressive and is it consistent with the purpose of the statute? It would have to be evaluated for that as well. Here, of course, our giving is consistent with the 13th Amendment purpose of removing badges and incidents of slavery, so that would have to be analyzed. But at its core, does it present First Amendment protected speech? Probably so. And if you look, for example, there are certainly other charities that are designed to help disadvantaged groups. As I said, Sons of Italy, the Irish Charitable Foundation, today if we had a foundation for based upon ancestry or race, that would be protected speech. So let me ask you this sort of second, you know, sort of worst case scenario that they cite in the brief. Why is what you're arguing really any different from the business owner who simply doesn't want to serve minorities? Title VII, mine run Title VII stuff. Why isn't that likewise? I mean, as bigoted as you say and repugnant as that is, he is, he intends to send a message. I don't like people of color. And that message will be received loud and clear. Here's the distinction, Your Honor, 1981 has operated for years in the mine run against typical commercial transactions, employment, housing, etc. The difference here is charitable giving is recognized as protected by the First Amendment. That sends a message. Americans speak with their money. They magnify their message with their money. You can spend it to send whatever message you want. Employment is not within that protected sphere. So even if you're employing people for a racist purpose, that's not protected. But where you're making charitable contributions to speak, this court in Coral Ridge was quite clear that that is protected activity. The Supreme Court was quite clear that that's protected in Cornelius. So are you saying in that response, are you saying that other stuff really isn't, or that charitable giving, as you've characterized this case, isn't the substance of Section 1981? Or are you saying even if it is, it's protected under the First Amendment in a way, for instance, that serving customers at a restaurant is not? Both, Your Honor. So to start with the First Amendment, it's protected under the First Amendment regardless of what the statute might say. And we know that, for example, from Coral Ridge, where this court said that the act of giving is expressive conduct. We also know that from the Supreme Court's decision in 303 Creative, that where there is an expressive element, the essence, again, context is king. Food not bombs. The court was clear there too. Here, the giving of money is expressive. Who I choose to give my donations to expresses a message. There's no doubt that what our clients are doing, black women who are giving their money exclusively to black women to fight and highlight discrimination and support economic empowerment, that's a message. AER has an opposing message, by the way, on an issue of national importance, which means the First Amendment concern here is at its zenith, Your Honor. That's clearly protected under the First Amendment. Then, I'm sorry, go ahead, Judge Nelson. I'm sorry. I'm just trying to kind of think out loud here, always dangerous. So is your First Amendment argument really sort of bound up in your Section 1981 argument? Because what you seem to be saying is, so long as something is like ordinary charitable donation, not a commercial exchange, then it has this sort of like special First Amendment protection. But if it's a commercial exchange in the sense that serving food to customers, housing people in your hotel, whatever, then the First Amendment sort of gloss is diminished a bit. But that seems like your characterization of this contest as something other than a commercial transaction. That's correct, Your Honor. 1981 argument, right? Like whether this is or is not a contract. Well, I think it's a First Amendment and a 1981 argument, Your Honor. The Supreme Court First Amendment cases, for example, there are clearly activities like in Runyon that fall on the non-protected side of the line. There are other activities, even if they have a commercial component to them, like 303 Creative, that are expressive in a First Amendment protected way. This is an easier case because both the Supreme Court and this court have repeatedly said that the giving of money is a protected First Amendment activity in the United States. That's how we speak. So I think you clearly got the First Amendment essence of the activity that protects it. And then you overlay that on 1981, where my colleague says, well, this is a clear application. With all due respect, as Judge Kaczynski pointed out in Kamenohana in his dissent, there has never, literally never been a case where Section 1981 was applied to a charity. It just doesn't apply. And we know that because if you look at the historical context, for example, when the Supreme Court in the town of Greece said, when you're looking at the religious clause, you look at what existed at the time. At the time of the enactment of Section 1981, there was the Order of Tenths, there were the Daughters of Africa, basically the same predecessor organization of what my clients are doing, and the Reconstruction Congress itself authorized the Freedmen's Bank. So what you're saying on the Kaczynski point is that no matter how thoroughly contractual a charitable organization's dealings are, Section 1981 just doesn't apply, ever? Every bit of charitable giving contains some form of what you might call common law contract. I give a scholarship, I want it to be used not for the university president's limousine, but for financial aid. Here, the contractual supposed elements actually enhance the message. The fact that it's a contest is just like if you have the shark tank for charity, which by the way, exists in many ways in many different organizations, it enhances the message. The fact that under the old rules, they gave rights to their name, image, and likeness, Your Honor, was in order to publicize the fact that they were giving to a black woman business owner. It enhances the message. So yes, Your Honor, I would argue that all of that is outside of the mainstream application of 1981, which is why you've never seen 1981 applied in that way before. What about a charity's purchase of just some office supplies? You know, the charity needs to fill the office, they call the local contractor, they find the cheapest price, and they enter into a contract. That contract would be subject to 1981, wouldn't it? 100%, Judge Locke. That would be a mainstream application of Section 1981. So is it the purpose for which it's done, or the intent for which it's done, that falls within, I'll call it the charity exception, I know that's not your words, that's mine, but that falls within this charity exception? Not quite, Your Honor. I think it's the fact that it is the charitable giving itself, the giving of money. And here, by the way, it's even enhanced because there's also mentoring and creation of an  Charity's giving money for a desk. Here it's giving money for something else. I mean, it's hard to, how am I to, how were we to determine, how was anyone to determine whether the giving in that case, I mean, for instance, the charity in the case may pick the highest bidder, but wants to help out because it happens to be a minority owned business and it's struggling and want to help it out. So how do we disassociate with that, even though it's for the purchase of office supplies for which they need? I think your example is a harder application. Here it is the core purpose of this charity to give to black women business owners to support their economic empowerment and to highlight their discrimination. Just like if my opponents wanted to have a charity where they give to everyone in order to highlight that purpose, that's what they do. It just seems to me that just because it's a charity, it falls outside of 1981. That can't be right. I agree, your Honor, and that's not my argument. This is the core expressive activity of the fearless foundation is to send this message, which for what it's worth is the message of section 1981. Can I ask you one follow up to a question I asked Mr. Dickey about the affirmative action exception? Of course, Judge Newsom. If under Farrell, it applies to 1981 and so now we're sort of beyond that and now we're into the brass tacks of the exception. Why isn't it a categorical bar? Your Honor, I think if you were to view it as a categorical bar, that means that no directed charity could ever fit within the scope of that exception. If you look at Johnson and Weber, for example, the Supreme Court said at that time that Title VII in 1964 could not possibly have been the first time that Congress, when it was trying to promote civil rights, prohibited remedial voluntary efforts. So here you've got a charity that's giving $20,000 and mentoring four times a year, a drop in the bucket against the .13% of venture capital funding that goes to black women against the fact that Professor Bradley, the evidence in the record, they get rejected three times as much as anybody else. There's no evidence in the record that the white applicants couldn't get their funding from anywhere else. It's true of all of these charities, Your Honor, that are directed to make a small change. Of course they're focused. If you spend $1, you can't spend it somewhere else. That's a reality of charitable giving. The thing about that that I just don't think I either fully buy or understand is it seems like at its core, the premise of your argument is that so long as there are lots of other sources of funding out there that are not discriminating on the basis of race, we can. In the context— Because we're just a drop in the bucket. Like sort of, you know, everyone else is saving us from our own unlawful conduct. I just don't quite understand. I would look at it as the reverse, Your Honor. In the context of charitable giving, again, the First Amendment protects your right to donate it to the cause that you choose. And in that context, with small giving, you can't say it's not remedial just because it's not solving everyone's problem. The answer can't possibly be give to everyone or no one. Can I ask you a related question? Of course, Judge Rosenbaum. So if the donations themselves, without doing the contest, would be protected by the First Amendment as expressions of—well, as First Amendment expression, and the only difference between the donation and the contest is that, I guess, the inherent part of this is being said out loud, why does that matter? In other words, if you're going to choose to donate money only to black businesswomen, and you choose to do that without having a contest, I mean, obviously— Oh, yes. I understand your point, Your Honor. So the answer is, it doesn't matter except to the extent that it provides additional First Amendment protection. In other words, if my clients held this contest or made their giving without a contest and just said, we're going to support black business owners, that would clearly be protected. The argument from my opponent is, well, now that you've added the contest, you've somehow fallen outside the protection. This court has been clear that it is the essence of the activity. The essence of the activity is still charitable giving, right? Sitting at a diner is not eating lunch, it's a sit-in, right? Food not bombs, you look at the context. So here, all of this just enhances the expressive element. The fact that it's a contest draws more attention to it. The fact that they publicize it on social media draws more attention to it. But the core expressive protected activity is the giving of the money. People see the giving of the money as a way of sending a message of support. This court was very clear about that in Coral Ridge, and the Supreme Court was clear about that in many cases, including Cornelius. That's the core protected activity. And so these additional elements, if anything, they just make my argument stronger. So as a practical matter, the difference, just as a practical matter, the difference between just giving the donation and giving the same donation after a contest to identify who you think is perhaps the most deserving of the donation, of the specific donation, is that you are doing one with more information than the other. That's correct, Your Honor. That's 100% correct. Every foundation in America, apply for my grant and tell me why you deserve it. Just gives them more information in order to direct their charitable protected speech, who they want to support with their money. Thank you. Thank you, Your Honors. Mr. Dickey? Oh, right. I'm sorry. Skipped you there. Ms. Dinnerstein? Good morning, Your Honors. May it please the court. I'm going to be addressing standing. The alliance does not meet the requirements for organizational standing. Just to remind the court, and I know the court is quite aware, we're here on a preliminary injunction, which the court below denied. The alliance has failed to prove that, at a minimum, it has satisfied the standard for organizational standing, which, of course, is an exception. Owners A, B, and C is not sufficient to show that there's a member of this organization who could bring these claims in his or her own right. Can I ask you just a quick question? Because I know that your time is short, so maybe we can kind of focus the inquiry. I think I take you to be making two arguments from your briefs. Number one, that they weren't identified by name. A, B, and C weren't identified by name. And that that somehow has Article III significance. And two, that the declarations were just too flimsy, you know, sort of ready, willing, and able is not enough. Do I have that basically right? Absolutely. Okay, so will you tell me on the first piece of that, why it is that the failure to identify someone by proper name has Article III significance? I think I might understand, like, why maybe that's a civil procedural kind of thing. But why does that emanate from the United States Constitution? I don't think I understand that. Yes, Your Honor, I'd be happy to address that. First, the Summers v. Earth Island Institute, the Supreme Court case, of course, held that you must name the individuals who were harmed. Courts can't rely on organizations' self-descriptions. Does that mean, really, in context, does it mean name by given name and surname, or name as in identify so that we can determine whether or not there's real standing? I think it's critical that it's name by your legal name. I'll use that description because your name does matter. Anonymous A, B, and C provides the court with absolutely no information about the identity of that member. It would provide... But why does that matter? I mean, unless there's some reason to believe that the affidavits are fictitious or fraudulent, why does it matter if we know the names? I would suggest it matters for three different reasons. First, as I was beginning to elaborate on, it would provide critical information. It would enable us to find out about that particular member, and perhaps on their social media websites, for example, they've broadcasted that they're happy to be a part of this lawsuit, but they don't want to have to do anything in order to pursue this claim, and it shows that they don't even need the $20,000, for example. Second, it certainly goes to credibility. When you sign something as Owner A, that is different than signing as Mylon Dinerstein. I am now asserting my name. It's a different level. It goes to the weight that should be given to it. And finally, the idea that Summers would have been turned out differently in that case if the group had simply submitted a declaration saying, Member A intends to visit the forest at some point in the future in the case. It doesn't flow from that. It doesn't make any sense. That's not really providing the court with any additional information. If we agree with your position that the legal name is required, I'll use the same terminology that my colleagues and you have used, does that mean that we would be disagreeing with the D.C. Circuit in the Federal Motor Carrier case, the B.R. case from the fourth, and the Ninth Circuit in the La Raza case? Yes, it does mean you would be disagreeing with those circuits. However, I would say the D.C. Circuit case is different for a couple of reasons. One, there was an administrative record. They're not here on a PI, and the burden is greater for a preliminary injunction. I mean, they're trying to enjoin the foundation from operating. They're not trying to litigate each phase of the case. The burden is not higher for standing. I mean, you're right that the burden is higher in the merits, but for standing purposes, we've even suggested that it's essentially a pleading standard at the preliminary injunction. We haven't actually decided that issue, but we've suggested that pleading would be sufficient or could be sufficient. I don't see how that's higher than it would be at the merit stage. Courts have held that at the preliminary injunction state, that the standard is substantial likelihood of standing. I understand the court's position, but courts have held that it's higher, and that makes sense because you're enjoining the – you're getting the end result without litigating the case, essentially. Can I get to the second one? Because you don't have much time, and I want to hear your thoughts on it. So in the affidavits, the three owners said, I am ready and able. And I'm wondering if there's a difference between that language and saying, I would definitely apply for this if it were open to non-black businesswomen. Maybe there is. I don't know. Your Honor, I think that there indeed is a difference, and I would think three cases support that position. Carney v. Adams, where the lawyer said that he would, in fact, like to apply to be a judge and had taken actually no concrete or particular specific steps to do so. And that's a Supreme Court case. And then there are two cases from this court, which I think support that completely, which is Aaron Private Clinic Management, LLC v. Vary, and Women's Emergency Network v. Bush. In both of those cases, the court found that the plaintiff had not taken sufficient steps to show that they were actually going to apply for what they were attempting to challenge. So in Aaron, that case involved methadone clinics, and the plaintiff had not taken any concrete steps, such as selecting a clinic location, securing a lease option, consulting with relevant government officials. And so I'm sorry to interrupt, but since you're over time, I'm going to try to focus a little bit on my particular concerns. And so here, the specific steps that you would say need to have been demonstrated would be what? They'd have to say we meet all of the qualifications, except that we're not black businesswomen. And then they say we're ready and able. But I don't think they say anything beyond that as far as what they've done to, I mean, they don't say anything about we've reviewed the application and we've written our essays or anything like that. So what specifically would you say would need to be the things that they need to do? But just one piggyback, because I think in fairness, right, they do say that one more thing, here's how we would use the money. So they have made some plans for how they would use the 20 grand. Very generically in one sentence. It's not like a detailed explanation. I will expand my website. It's not hardly, I would say, providing detailed information. Okay, here's my list. One, they're anonymous. Two, they omit why they need 20,000. Three, they fail to state that they've applied for grants or that they need the money at all. Four, they do not state that they need mentorship. Five, they don't tell us about the viability or strength of their business, and that is required under the rules, and that's docket 2-2. They don't even say they will apply if criteria is changed. They only say they are ready and able. They've not signed under the penalty of perjury, and I would suggest that Mr. Blum's declaration doesn't even help bring this add any details, because in his, he simply says two of the three members are able to apply. That provides no information to the court about which A, B, or C are apply. Although, I guess in fairness, you just need one, right? Yes, you just need one, and I'm suggesting, Your Honor, you have zero. I just want to go back to one point the court made very, very quickly about this court does have precedent, Georgia Republican Party versus SEC, which did hold that post-Summers, that naming of an individual was required. I understand that that court didn't involve an anonymous declaration, but I do suggest to this court that the logic is really the same. If you're not identifying by a member by name, you're essentially not providing the court with sufficient information to determine whether this exception, organizational standing, should apply, because you need to know who the member is. Just one member, and I just, to Judge Luck's point, want to remind the court we are here on a preliminary injunction. They can litigate the case, but should the court grant an injunction based on anonymous affirmation when we don't even know who the businesses are? I suggest not, and respectfully request that the court affirm the district court's decision to deny the injunction. Thank you, Ms. Dinerstein, and we will hear again from Mr. Dickey. Mr. Dickey, I allowed counsel on the other side to run over a little bit, because we all had questions. I'm going to give you five extra minutes,  Thank you, Your Honor. I'd just like to start real briefly by pointing out that, as we've said throughout this, that the First Amendment inquiry is context-specific, and I want to note that we didn't hear a lot in my opposing counsel's argument about the context of this contest. They've said that- I'm sorry to interrupt, counsel, but I do want to actually hear from you a little bit about the standing issue, and I'm not as concerned about naming the names, but I am concerned about the affidavits here, and I'll tell you why. They say ready and able. They don't say I would apply if this restriction were removed, and then we have the curious case of Mr. Blum's affidavit, which says two of them are ready and able, and yet, if you compare all three affidavits, they're pretty much the same. So, I mean, if only two of the three are ready and able, and all of them are saying we're ready and able, how does that tell us anything about whether any of them actually would apply? So, each of the affidavits does attest that the members are ready and able. That's the language that is typically used in associational standings to show that you're ready and able. The fearless has argued that that is not sufficient based on cases like Carney, but Carney is actually a very unique case where the court said the allegation that somebody was ready and able to apply had been affirmatively disproven on a summary judgment record. I think it listed something like three considerations and six factors that it walked through to reach that conclusion, including that the plaintiff in that case had changed their party affiliation to actually, after reading a law review article, so that they could bring the suit, they had not identified any cases. They cite a few other Eleventh Circuit cases. In Women's Emergency Network, the party was actually not barred from the activity. They were challenging a pro-life license plate, I believe, in Florida, and saying that they wanted to also be able to express their message, but nothing in the law actually stopped them from doing that. And in Aaron Private Management, it was on a fuller record, and there was nothing to show that any steps had been taken. But here, our members actually identified in their sworn affidavits a specific opportunity that was opening and closing within a month that they were ready and able to apply to. They explained why they wanted to apply to that opportunity, and the steps to apply to that opportunity were relatively minimal. They've cited no case where there's a particular opportunity that somebody says they're ready and able to take advantage of but for their racial discrimination, but for the racial discrimination that's barring them or any other factor barring them. Can I ask you a quick question? I just don't have the affidavits in front of me. When they say able and ready, able and ready to do what? Like, what's the full sentence? I just don't remember. I'm not sure I can quote it verbatim, but the sentence does say I am able and ready to apply to the, I think it's the fourth promotional period. The reason I ask is that I don't see any philosophical space between that and I would apply but can't. I just don't understand that. I agree, Judge Newsom. That's the language that has come from the Supreme Court of what is required to show standing in this kind of challenge, and so that's the language that is ordinarily used in affidavits. I think saying that's not sufficient would do away with all sorts of associational standings. Congrats to the hammocker plaintiff. Did he file an application and have it ready to go but for the ineligibility requirement? In that case, there were two factors. He had applied for undergrad admission, but he did not fill out an application, and there are lots of other examples. The ACLU brings to, for example, on behalf of immigrant groups seeking benefits all the time but saying they're being unlawfully excluded. The affidavits in almost all of those cases say some variety, that they're ready and able to seek or take advantage of the benefit. Congrats to the court. This is my understanding, and just correct me if I'm wrong, as to Plaintiff Hammacher. After being denied admission, Hammacher demonstrated that he was, quote, able and ready, so not even willing, able and ready, to apply as a transfer student should the university cease to use race in undergraduate admissions. He, therefore, has standing to seek perspective relief with respect to the university's continued use of race in undergraduate admissions. That's exactly right, Judge Luck. The Supreme Court has repeatedly said that when you've identified, at least in a case where you have identified a specific opportunity that you're able and ready to apply to, their admission to the University of Michigan, which is actually a far more amorphous opportunity than the fourth promotional period of the Fearless Drivers Grant Contest, that that is more than adequate to show that you have standing. Can I ask you a merits question? Same question that I was asking Mr. Schwartz. Help me understand sort of the hydraulic relationship between whether this is subject to 1981 and the First Amendment interests at stake, right? Because Judge Rosenbaum was asking the question about just a pure donation, just like a sack of money dropped on someone's doorstep, no strings attached. If that's First Amendment expressive activity, why is the fact that something is sort of contractual enough to be subject to 1981, why does it sort of bleed over into the First Amendment-ness of the activity? Does that make sense? Yes, Judge Newsom. So first of all, I want to caveat. We discussed this a bit previously. I'm not sure a donation just writ large in any circumstances is expressive. This Court has never held that. Haven't we said the exact opposite of that? So I think that argument would go to Coral Ridge, and I don't think— Let me ask you this.  but I'm looking at pages 19 and 20 of your brief, and tell me if I'm wrong in this because you wrote it, or your client wrote it. For this reason, the same charitable act might be expressive in some context, see Florida Not Bombs 1, even though, quote, most such events will not be expressive, quoting from Fort Lauderdale Bombs 2. Did we not say in the Fort Lauderdale Bombs case that the same act sometimes can be contextually expressive and sometimes contextually be not expressive in the context of charitable giving? That's exactly right, Judge Luck. And in fact, in Food Not Bombs, the Court said we have to go through five contextual factors, and that's a case that's much more on point here where they would have to be able to bring that kind of context to show that a donation to a person is sending some sort of message based on their race. Can you apply those, just quickly, those contextual factors to this situation? So we did it in Burns. We did it in Food Not Bombs. I'm curious about how you think those same kind of contextual factors would apply to this grant contest. Sure. So those haven't been briefed. I'll do my best to sort of walk through them briefly. There are five factors. I'm not sure whether I'll catch them all. I don't want to put you on the spot, but whatever your understanding of how, in context, this grant context could be seen as either charitable or not charitable. Sure. Some of the factors there were, well, and I want to clarify, it's not just charitable, but charity that sends a message. You meant protected or not protected. So some of the factors were that they did it in a traditional public forum. I don't think we're talking about a traditional public forum here. We're talking about their private website. In fact, we've made the point going to Burns that a lot of the conduct that they're arguing is protected is actually taking place in private, which can never be expressive. And some of the additional factors, I think, were things like they did it outside government buildings to kind of make a point. And I think the one that's sort of really key here is that it was this sort of public meal-sharing event that they said is a thing that goes back millennia and has always been understood to sort of express some kind of message. And here we don't have anything like that. They have not even argued that, you know, running a skill-based contest to pick a competition to select the winning prize based on potential for business growth is something that has for millennia been understood as expressing some sort of message about the winner's race. What if at the end of the day we conclude that this was First Amendment Act and we have to balance those things? What is the test we would apply assuming that this was expressive and therefore has been regulated by 1981? How would we then filter this in through our legal test? So the test you would apply is intermediate scrutiny. And if I could go a bit too wide, because I think it also shows an aspect of why their argument on expressive conduct is so extreme. So they have argued that other cases have applied strict scrutiny, but what was involved in all of those cases was compelled speech. For example, in Coral Ridge it was saying Amazon would be sending because it was a mission, an organization devoted to a mission, they were saying Amazon would be forced to send Coral Ridge's message. But here they have asserted that, you know, a Hispanic, Asian, or white woman who even applied to their contest would be co-opting their voice and sending a message. I think if walking up to a lunch counter and expecting to be served, regardless of your race, is somehow sending an expressive message merely because the person on the other side would prefer to discriminate, you don't have a workable view of expressive conduct. You know, our members, they pointed to the alliance's message, but the alliance is not going to pay for this, is not going to enter this contest. Members are, and they would have to show not only that our members would be co-opting a message, but that any non-black woman would be sending one. So I think intermediate scrutiny would apply. That's what the court has always said applies to expressive conduct. And here there's no compelled message, and I think we survive under any level of scrutiny, but Section 1981 was enacted to end discrimination in contracting and is perfectly suited to that. I see my time is up. If there are no further questions, we'd ask that the court reverse and remand with instructions. Can I ask you a question? Sorry. Of course. What if the contest were open to everybody, but then it turned out that for whatever reason, because maybe weighted more heavily would be the fact that the person was a black businesswoman, black businesswoman received the grant. So if I understand it, if it's still sort of discrimination based on race, Section 1981 prohibits discrimination based on race. I'm not sure I'm exactly following the question, but that would go more to an evidentiary question of what is the reason this person was selected instead of a case like this, where it's just an express flat racial bar that they're. All right, let me ask you something else. Let's say that the contest was open to everybody, but said that whoever we think does the most to further black businesswomen will receive the prize. I think that. So there, as I understand it, they would be discriminating. If, for example, an Asian person could submit an application saying, here's how I am seeking to promote vision business women. That's discrimination based on message, as I understand it, not based on status. So I, I think you. So that's not okay either. They can't in your view, they can't say, I mean, maybe they awarded to an Asian woman. No, they think that the Asian woman has done the most to further. Yeah. I think this highlights that the actual implications of this case for the first amendment are pretty minor. I think what we're saying is when they're discriminating based on message that, you know, we're trying. We're trying to find people who are in the community, promoting black businesses. They're free to do that. What they cannot do is discriminate in their actual contracting based on race and the courts just to make sure I'm understanding. Cause I, I want, I think you said maybe. Maybe you said the same thing throughout. It sounded like you said two different things to me. So I want to make sure I meant to say that you can discriminate based on mess. You can, you can discriminate based on message. You absolutely cannot impose a bar based on race. Okay. And so, so. From your standpoint, it would be okay. If they. If they said. We're going to award this on the basis of who does the most for black businesswomen. If they had it open to everybody. If it's open to everybody and they're trying to select, say, a recipient of the prize who. Is doing the most to advance the cause they view worthwhile. I don't, I don't think that. I think that sort of promotion of a cause is protected, but what they can't do is say, we're going to select the black woman who is doing them. They cannot apply a categorical racial bar. I guess I would have thought this was the distinction that like, is at the very heart of 303, right? 303. The court basically says, look, of course you can't say we're, we're not serving gay people. Fine. What you can't do is put words in the mouth of the proprietor and say, you know, like, you know, sort of force that proprietor to express a message that he or she doesn't want to. Express. And so the discrimination, yes. Discrimination based on message is fine, but discrimination based on protected characteristic is different. Right. They, they absolutely, they can, they can discriminate based on the message that an organization is sending or almost any other factor. What they, what they can't do is discriminate based on the protected characteristic, which is here race. That's not just in 303 creative. It's in, it's in Hurley. In fact, they've collected a helpful collection of cases where the court has said that very clearly and none where it has said otherwise. And here, I don't think there's any dispute that this is a flat racial bar. All right. Thank you very much. Counsel. Thank you. You're on recess until tomorrow.